IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION


RUFUS MILLER,

        Petitioner

v.                                        CASE NO. 5:10-cv-276-RS-GRJ

SECRETARY, DEPT.
OF CORRECTIONS,

        Respondent.

_____/

## REPORT AND RECOMMENDATION


Petitioner initiated this case by filing a *pro se* Petition for Writ of Habeas Corpus

pursuant to 28 U.S.C. § 2254.  (Doc. 1).  The Respondent filed a response and an

appendix with relevant portions of the state-court record, and Petitioner filed a reply.

(Doc. 18, 22).  Upon due consideration of the petition, the response, the reply, and the

state-court records, the undersigned recommends that the petition be denied.

## State-Court Proceedings

Petitioner was arrested on January 10, 2003 and charged with one count of first-

degree murder by premeditation or during the commission of a felony (Count I) and one

count of robbery with a firearm (Count II) for the robbery and murder of Jerry Brown.

(Resp. Ex. B, C).  Petitioner was tried by a jury in guilt phase proceedings, in which the

State sought the death penalty.  (Resp. Ex. D).  The jury returned verdicts of guilty on

each count.  (Resp. Ex. E.)  The relevant evidence presented at trial was as follows:

On or about December 26, 2002, Jerry Brown was shot and killed in Bayou

George, Florida.  On January 2, 2003, Brown's body was found in a cemetery in

Washington County, just off of Highway 279.  Brown lived in Bay County, Florida, and

owned a wrecker service which he ran out of his home.  Brown was known to keep a

large amount of cash on his person. (Resp. Ex. D, at 68, 77, 85, 102, 146.)  Petitioner

was a longtime friend of Brown's, and Brown provided Petitioner with a place to stay

and a job when Petitioner was released from prison in November 2002.  Occasionally,

Brown would loan Petitioner money or a vehicle.  (Resp. Ex. D, at 90, 146.)

    Around December 21, 2002, Petitioner smoked crack cocaine with two friends,

Tracy Hamm and Sonny Prescott.  They went to Brown's home to borrow some money,

where Hamm noticed that Brown had a stack of money in his pocket.  Petitioner stated

that he would like to knock Brown in the head and take his money.

    On December 25, 2002, Brown had dinner with Margaret and James Redmond.

At dinner, Brown took out about $40,000 in cash and was counting it.  The next day,

Brown cashed Petitioner's income tax return check for him in the morning.  (Resp. Ex.

D, at 313, 420.)  Brown was alive at 7:00 or 8:00 pm on the evening of December 26,

2002, because James Redmond talked to him on the phone.  A carpenter named

Douglas Peterson also talked to Brown that evening at his home.

    Meanwhile on the evening of December 26, 2002, Petitioner had been calling his

friend Prescott on the telephone.  Petitioner eventually drove to Prescott's house,

driving Brown's red truck.  There was some evidence that Brown generally did not lend

out his red truck.  Petitioner and Prescott drove around and purchased crack cocaine.

(Resp. Ex. D, at 441-44.)  Prescott testified that they then drove to Brown's house,

where they stayed for about 45 minutes to find the tag to a different truck that Brown

had recently sold Petitioner.

The next morning, on December 27, 2002, Peterson was to meet Brown at 7:00 am. Brown did not arrive, and did not pick up the phone. (Resp. Ex. D, at 75-77.) Peterson drove to Brown's house after lunch and noticed that the gate was "busted open." (Resp. Ex. D, at 80-81.) The next morning, the Redmonds met Peterson at Brown's house to help him search for Brown, but with no success. (Resp. Ex. D, at 95-96.) Law enforcement was called that afternoon. (Resp. Ex. D, at 230, 277-81.) The police found evidence, including bullet holes, that Brown had been beaten, robbed, and shot. The $40,000 that Brown had been counting on December 25, 2002 was not recovered.

In the early morning of December 30, 2002, Petitioner was at a hotel using crack cocaine with Sonny Prescott. Law enforcement questioned him about Brown's disappearance and searched his truck. (Resp. Ex. D, at 653-56.) They did not arrest him, however, and he left the hotel.

On January 2, 2003, Brown's body was found in rural Washington County, Florida near the Ebenezer Church cemetery. (Resp. Ex. D at 332-33.) The site of Brown's body was close to the location of the grave of Petitioner's mother. From discoloration on the body, it appeared that Brown had been dead for "at least a day or so." (Resp. Ex. D, at 363.) There was conflicting testimony, however, regarding the date of death, with expert testimony suggesting that death could have occurred between December 26, 2002 and December 31, 2002. (Resp. Ex. D, at 908, 909-10.) An autopsy confirmed that the cause of death was gunshot wound to the head. There were three gunshot wounds, as well as indications of blunt trauma to the head and

upper torso. (Resp. Ex. D, at 382.) On January 10, 2003, Petitioner was arrested and questioned about Brown's disappearance and death. (Resp. Ex. D, at 657.)

The State's evidence included testimony regarding Petitioner's increased spending of money purchasing "crack" cocaine following the evening of December 26, 2002. In addition, the State presented evidence of admissions made by Petitioner following Brown's murder, including statements to Andy Sanford, with whom Petitioner was incarcerated. Sanford testified that Petitioner was high on crack at the time of the murder, and that he killed Brown after Brown refused to loan him money. Several other individuals with whom Petitioner was incarcerated testified that Petitioner had admitted the crime while in jail. (Resp. Ex. D, at 418-20.)

Archie White, Petitioner's nephew, was also interviewed by police in February 2003. He stated that Petitioner had told him, prior to the murder, that he knew Brown kept a lot of money and pills in his house and that Petitioner and White could go to Brown's home and take it. White also stated that Petitioner indicated that if he ran into a "problem" while robbing Brown's home, he would "take care of it." (Resp. Ex. D, at 696-97.)

White was not able to testify as to his complete statement at trial because, he claimed, he had been "knocked in the head" while incarcerated and could not remember the conversation he allegedly had with Petitioner, or the previous statement he had given to law enforcement. The Court allowed, over the objection of Petitioner, the State to play White's taped statement to law enforcement as an exception to hearsay under past recorded recollection, §90.404, Fla. Stat. (2005).

On February 17, 2004, the jury found Petitioner guilty of Murder in the First

Degree and Robbery with a Firearm.  (Resp. Ex. E.)  On February 18, 2004, the jury recommended that Petitioner be sentenced to life in prison without the possibility of release.  (Resp. Ex. F, G.)

Petitioner filed a motion for new trial on February 25, 2004, then an amended motion for new trial on March 18, 2004.  (Resp. Ex. H, I.)  ON May 18, 2004, the trial court granted Petitioner's motion for a new trial on the grounds that admitting Archie White's previous statement had violated the Confrontation Clause.  (Resp. Ex. N.)  On December 12, 2005, the First District Court of Appeals ("First DCA") reversed the trial court's grant of a new trial and remanded for reinstatement of the jury verdict.  *State v. Miller*, 918 So. 2d 350 (Fla. 1st DCA 2005).  The First DCA reasoned that there had been no Confrontation Clause violation because Archie White was present at trial and could be questioned, despite his loss of memory.  *Id.*

On remand, Petitioner was sentenced to concurrent terms of life imprisonment on both counts.  (Resp. Ex. U.)  Petitioner appealed to the First DCA, which affirmed without written opinion on July 17, 2007.  *Miller v. State*, 959 So. 2d 1993 (Fla. 1st DCA 2007).  Petitioner then filed a postconviction motion pursuant to Florida Rule of Criminal Procedure 3.850 on September 17, 2008.  (Resp. Ex. BB.)  The state postconviction court held an evidentiary hearing, then denied all claims on the merits.  (Resp. Ex. CC, FF.)  The First DCA affirmed the denial of postconviction relief without written opinion on September 8, 2010.  *Miller v. State*, 44 So. 3d 583 (Fla. 1st DCA 2010).

The instant Petition followed.  (Doc. 1.)  In his Petition, Petitioner asserts 6 claims for relief: two claims that the trial court erred in denying his motion for a new trial, based on the weight of the evidence and the Confrontation Clause issue; and four

claims that his trial counsel was constitutionally ineffective.

## Section 2254 Exhaustion Requirement

Before bringing a habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his conviction, either on direct appeal or in a state post-conviction motion. 28 U.S.C. § 2254(b)(1), (c). Exhaustion requires that prisoners give the state courts a "full and fair opportunity" to resolve all federal constitutional claims by "invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). To properly exhaust a federal claim, a petitioner must "fairly present" the claim in each appropriate state court, thereby affording the state courts a meaningful opportunity to "pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quotation omitted).

When a petitioner fails to properly exhaust a federal claim in state court, and it is obvious that the unexhausted claim would now be procedurally barred under state law, the claim is procedurally defaulted. *Bailey v. Nagle*, 172 F.3d 1299, 1303 (11th Cir. 1999). Federal habeas courts are precluded from reviewing the merits of procedurally defaulted claims unless the petitioner can show either (1) cause for the failure to properly present the claim and actual prejudice from the default, or (2) that a fundamental miscarriage of justice would result if the claim were not considered. *Id.* at 1302, 1306.

## Section 2254 Standard of Review

Under 28 U.S.C. § 2254(d)(2), a federal court may not grant a state prisoner's application for a writ of habeas corpus based on a claim already adjudicated on the

merits in state court unless that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Under § 2254(e)(1), the petitioner must advance clear and convincing evidence that the state court's factual determination was "objectively unreasonable" to rebut the presumption that the determination was correct. *Gill v. Mecusker*, 633 F.3d 1272, 1287 (11th Cir. 2011); see § 2254(e) (1).

As to legal findings, a petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1). "[C]learly established Federal law, as determined by the Supreme Court of the United States," refers only to holdings (rather than *dicta*) of the Supreme Court, but decisions of lower federal courts may be considered to the extent that they demonstrate how those courts applied Supreme Court holdings. *Hawkins v. Alabama,* 318 F.3d 1302, 1309 (11th Cir. 2003) (citations omitted) ("The decisions of other federal circuit courts (and our decisions for that matter) are helpful to the AEDPA inquiry only to the extent that the decisions demonstrate that the Supreme Court's pre-existing, clearly established law compelled the circuit courts (and by implication would compel a state court) to decide in a definite way the case before them."). *See also Carey v. Musladin,* 549 U.S. 70, 74-77 (2006) (§ 2254 refers to holdings, rather than *dicta,* of the Supreme Court, collecting circuit cases "[r]eflecting the lack of guidance from this Court," on the issue).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have independent meanings. *Williams v. Taylor,* 529 U.S. 362, 404-06 (2000); *Bell v. Cone,*

535 U.S. 685, 694 (2002) (citing *Williams*).  "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams,* 529 U.S. at 412-13. "Avoiding these pitfalls [described in *Williams v. Taylor* ] does not require citation of our cases-indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer,* 537 U.S. 3, 8  (2002) (emphasis in original). Further, "whether a state court's decision was unreasonable must be assessed in light of the record the court had before it." *Holland v. Jackson,* 542 U.S. 649, 652  (2004).

In *Gill v. Mecusker*, 633 F.3d 1272 (11th Cir. 2011), the Eleventh Circuit clarified how the federal habeas court should address the "unreasonable application of law" and the "unreasonable determination of facts" tests.  The court acknowledged the well-settled principle that summary affirmances, such as the Florida First District Court of Appeal's in this case, are presumed adjudicated on the merits and warrant deference. *Id*. at 1288 (citing *Harrington v. Richter*, ___ U.S. ___, 131 S.Ct. 770, 784–85 (2011), and *Wright v. Sec'y for the Dep't of Corr.*, 278 F.3d 1245, 1254 (11th Cir.2002)). "A judicial decision and a judicial opinion are not the same thing," and the Supreme Court has confirmed that determining whether the state court unreasonably applied the law or unreasonably determined the facts requires only a decision, not an

opinion. *Id*. at 1291 (citing *Harrington*, 131 S.Ct. at 784). Yet, the Supreme Court has never squarely addressed whether under the "unreasonable application" test a federal habeas court "looks exclusively to the objective reasonableness of the state court's ultimate conclusion or must also consider the method by which the state court arrives at its conclusion." *Id.* at 1289 (quoting *Neal v. Puckett*, 286 F.3d 230, 244–45 (5th Cir.2002) (summarizing the emerging circuit split)). The Eleventh Circuit concluded that district courts must apply the plain language of § 2254(d) and answer the "precise question" raised in a claim based on the state court's ultimate legal conclusion, and should not "evaluate or rely upon the correctness of the state court's process of reasoning." *Id.* at 1291. In short, the court stated, "the statutory language focuses on the result, not on the reasoning that led to the result." *Id.*

In light of *Gill,* the "unreasonable determination of facts" standard plays a limited role in habeas review because the district court considers the reasonableness of the trial court's fact finding only to the extent that the state court's ultimate conclusion relied on it. *Id.* at 1292. A federal habeas court can consider the full record before it to answer "the only question that matters[:]" whether the state court's decision was objectively unreasonable. *Gill*, 133 F.3d at 1290.

### Ineffective Assistance of Counsel

Because most of Petitioner's claims allege ineffective assistance, a review of the applicable law is necessary. Under *Strickland v. Washington*, 466 U.S. 668, 677-78 (1984), to prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy.

*Strickland*, 466 U.S. at 686.  The court may dispose of the claim if a defendant fails to

carry his burden of proof on either the performance or the prejudice prong.  *Id*. at 697.

To show counsel's performance was unreasonable, a defendant must establish

that "no competent counsel would have taken the action that his counsel did take."

*Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001) (emphasis omitted).  "The

relevant question is not whether counsel's choices were strategic, but whether they

were reasonable."  *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000).  There are no

"absolute rules" for determining whether counsel's actions were indeed reasonable, as

"[a]bsolute rules would interfere with counsel's independence–which is also

constitutionally protected–and would restrict the wide latitude counsel have in making

tactical decisions."  *Putnam v. Head*, 268 F.3d 1223, 1244 (11th Cir. 2001).  "To uphold

a lawyer's strategy, [the Court] need not attempt to divine the lawyer's mental

processes underlying the strategy."  *Chandler v. United States*, 218 F.3d 1305, 1314

n.16 (11th Cir. 2000) (en banc).  "No lawyer can be expected to have considered all of

the ways [to provide effective assistance]."  *Id*.

> If a defense lawyer pursued course A, it is immaterial that some other
> reasonable courses of defense (that the lawyer did not think of at all)
> existed and that the lawyer's pursuit of course A was not a deliberate
> choice between course A, course B, and so on.  The lawyer's strategy
> was course A.  And [the Court's] inquiry is limited to whether this strategy,
> that is, course A, might have been a reasonable one.

*Id*.

To show prejudice, a defendant must show more than simply that counsel's

unreasonable conduct might have had "some conceivable effect on the outcome of the

proceeding."  *Strickland*, 466 U.S. at 693.  Instead, a defendant must show a

"reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.  A "reasonable probability is defined as a probability sufficient to undermine confidence in the outcome." *Id*.

When, as here, the state courts have denied an ineffective assistance of counsel claim on the merits, the standard a petitioner must meet to obtain federal habeas relief is a difficult one. *Harrington* 131 S.Ct. at 786.  The standard is not whether an error was committed, but whether the state court decision is contrary to or an unreasonable application of federal law that has been clearly established by decisions of the Supreme Court. 28 U.S.C. § 2254(d)(1).  As the Supreme Court explained, error alone is not enough, because "[f]or purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law." *Harrington*, 131 S.Ct. at 785 (quotation marks omitted).  And "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. at 786.

When faced with an ineffective assistance of counsel claim that was denied on the merits by the state courts, a federal habeas court "must determine what arguments or theories supported or, [if none were stated], could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id*.  So long as fairminded jurists could disagree about whether the state court's denial of the claim was inconsistent with an earlier Supreme Court decision, federal habeas relief must be denied. *Id*.  Stated the other way, only if "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents" may relief be granted.  *Id*.

Even without the deference due under § 2254, the *Strickland* standard for judging the performance of counsel "is a most deferential one." *Id.* at 788. When combined with the extra layer of deference that § 2254 provides, the result is double deference and the question becomes whether "there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id*. Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.

## *Claim One: The State Court Erred by Denying Petitioner's Motion for a New Trial Because the Conviction was Against the Weight of the Evidence*

Petitioner contends that the trial court erred in denying his motion for new trial, on the ground that the conviction was against the weight of the evidence. As Respondent points out, a Florida trial court's authority to grant a new trial as against the weight of the evidence is derived from state law. *See* Fla. R. Crim. P. 3.600(a)(2). Where the evidence is sufficient to support a conviction as a matter of federal due process, a claim that the verdict was against the weight of the evidence presents an issue of state law that is not cognizable on federal habeas review. *See Young v. Kemp*, 760 F.2d 1097, 1105 (11th Cir. 1985) (federal habeas court has no power to grant relief because it finds that the state conviction is against the weight of the evidence).

Here, the Court concludes that the evidence was sufficient to support the conviction as a matter of federal due process. The State presented testimony that Petitioner discussed robbing the victim prior to the murder, and that Petitioner had

admitted to other inmates that he had robbed and killed the victim. Petitioner was also at the victim's home around the time of the crime, and was seen driving the victim's truck. Accordingly, the Court concludes that the "weight of the evidence" issue is not cognizable on federal habeas review.

### *Claim Two: The State Court Erred by Denying Petitioner's Motion for a New Trial Because the Admission of Archie White's Statements Violated Petitioner's Right of Confrontation*

Petitioner argues that admitting his nephew Archie White's past statements under the "past recollection recorded" exception to the hearsay rule, after White testified that he could not remember those statements, violated his Sixth Amendment right to confront witnesses against him. Petitioner raised this issue in his first motion for a new trial, which was granted by the state trial court but reversed by the First DCA. Petitioner alleges that the state court erred in denying his motion for a new trial based upon the Confrontation Clause issue.

As discussed above, White gave a statement to the Assistant State Attorney and a Sheriff's Office investigator, that Petitioner wanted to get money and pills from the victim and would "take care of" any problems. When the State called White to testify, he stated that he had been "knocked in the head" with a metal bar while in prison, and could not remember the specifics of his prior statement. (Resp. Ex. D, at 162-70.) The State unsuccessfully attempted to refresh White's recollection with the transcript of the statement. The state trial judge allowed both sides to question White outside the presence of the jury. *Id.* at 170-79. White testified that he was concerned that people who testified against others had a bad reputation in prison, and that he was hit in the head while being called a "snitch." *Id.* at 171-72. White read his statement and

testified that he did not remember all of it, but "I guess if it says I said it, I said it." *Id.* at

178. The court also read a letter from White to the prosecutor stating that he felt that

his life was in danger if he testified. At this point, the court declared White to be a court

witness. *Id.* at 182. The court ruled, over Petitioner's Confrontation Clause objection,

that White's earlier statement was admissible as past recollection recorded. *Id.* at 498-

503.

Petitioner now argues that the trial court's denial of a new trial based on the

admission of White's prior statements violated his right to confront witnesses against

him, under *Crawford v. Washington*, 541 U.S. 36 (2004). *Crawford* held that where a

court admits "testimonial" statements under a hearsay exception, where the declarant is

unavailable, there must have been a prior opportunity for cross-examination. *Id.* at 68.

Petitioner argues that White's previous statement to law enforcement was a testimonial

statement, and that he was unavailable at trial due to his alleged memory loss.

Petitioner argues that because White was "unavailable" and he had no prior opportunity

to cross-examine him, it was error to admit White's previous statements under a

hearsay exception.

The First DCA, reversing the trial court's grant of a new trial, considered and

rejected this argument. *State v. Miller*, 918 So.2d 350 (Fla. 1st DCA 2005).

> *Crawford* made clear, that "when a declarant appears for cross-
> examination at trial, the Confrontation Clause places no constraints at all
> on the use of his prior testimonial statements." *Crawford*, 124 S. Ct. At
> 1369 n.9. "The Confrontation Clause guarantees only an *opportunity* for
> effective cross-examination, not cross-examination that is effective in
> whatever way, and to whatever extent, the defense might wish." *United
> States v. Owens*, 484 U.S. 554, 559 (1988) (emphasis in original). We
> recognize that, under some circumstances, a witness's physical presence
> in the courtroom may not be sufficient to meet Confrontation Clause

requirements.  However, the mere fact that a witness has a faulty memory does not result in a Confrontation Clause violation.  *See id.*  The Confrontation Clause is satisfied if the defendant has the opportunity to bring out such matters as a witness's faulty memory.  *See id.*

Here, the witness was present at trial.  He testified his prior statement was given under oath, he would have made an effort to accurately tell the truth while giving the statement, and the information contained in the statement would have been fresher in his memory.  He further testified that he could not remember the basis for his prior statement, because he had subsequently been hit on the head with a barbell.  The defendant had an opportunity to cross-examine this witness as to his prior statement and faulty memory.

Since the witness was present at trial and available for cross-examination, the introduction of his prior testimonial statements was permissible, and did not violate *Crawford*.

*Id.* at 351-52.  The state court's order was not contrary to or an unreasonable application of federal law.  In *United States v. Owens*, the Supreme Court addressed the precise situation presented here: a witness made a previous identification of the defendant, appeared in court, and testified that he could not remember the details of his prior statement.  484 U.S. 554 (1988).  In *Owens*, the Court held that there was no Confrontation Clause violation in admitting the prior statement, because the defendant had an opportunity to cross-examine the witness; "effective" cross-examination was not a right guaranteed under the Sixth Amendment.  *Id.* at 558.  *Crawford* did not overrule *Owens*.

*Yanez v. Minnesota*, 562 F.3d 958 (8th Cir. 2009) is also instructive.  In *Yanez*, the Eighth Circuit rejected the petitioner's argument that the state court erred by admitting a witness's previous statements where the witness appeared at trial but testified an inability to remember the previous statements.  The court there noted that,

as in this case, the witness "took the oath, took the stand, and was subject to questioning." *Id.* at 963. Relying on *Owens*, the court found that the witness's "inability to recall the details of her prior statements or the incidents that led to those statements did not render the admission of the out-of-court testimonial statements constitutionally defective." *Id.* at 964. Similarly, the state court's decision here was not contrary to or an unreasonable application of clearly established federal law. Petitioner is not entitled to relief on this claim.

### *Claim Three: Ineffective Assistance of Counsel for Failing to Call Wanda Smebly as an Alibi Witness*

Petitioner argues that his counsel was ineffective for failing to call Wanda Smebly as an alibi witness at trial. Petitioner asserts that Smebly was available to testify and would have testified that Petitioner was with her on the date of the victim's murder.

Petitioner has not shown that the state court's ruling was contrary to or an unreasonable application of federal law. "Complaints concerning uncalled witnesses impose a heavy showing since the presentation of testimonial evidence is a matter of trial strategy and often allegations of what a witness would have testified to are largely speculative." *United States v. Guerra*, 628 F.2d 410, 413 (5th Cir. 1980). In this case, the state postconviction court held an evidentiary hearing at which Petitioner's trial counsel testified:

> We interviewed Miss Smebly probably one or two times. I made the decision not to call her, and I can't really remember why. I think it had something to do with money and marijuana. That's what, what I remember about it. And I can't, what I recall is you could've, you could've taken a twist on her testimony to show that [Petitioner] either needed money or had it, or had money he shouldn't have had. And so there was,

there was a negative connotation to her testimony, so I made a decision
not to call her and I can't remember exactly what the reason is today.  But
we did interview her and reflected upon whether we should or should not
call her, and I made the decision not to call her.

(Resp. Ex. CC, at 46.)

In this case, Petitioner's counsel testified to the fact that he interviewed Smebly

and made a decision not to call her as a witness, because he felt that her testimony

would reflect negatively on his client.  Smebly also testified at the hearing that she could

have provided an alibi for Petitioner' but did not remember the exact times that she was

ostensibly with Petitioner on the night in question.  (Resp. Ex. CC, at 38.)  Petitioner's

speculative assertions regarding what Smebly would have testified to are insufficient to

overcome the deference afforded to counsel's strategic decisions regarding what

evidence to present.  The state court's finding – that under these circumstances,

Petitioner's trial counsel's decision to not call Smebly as a witness was a reasonable

professional decision – was not an unreasonable application of *Strickland*.  Accordingly,

Petitioner is not entitled to relief on this claim.

### *Claim Four: Ineffective Assistance of Counsel for Failing to Call Exculpatory Witnesses / Newly Discovered Evidence*

Petitioner asserts that his counsel was ineffective for failing to call Robert

Laminack as a witness.  Petitioner asserts that Laminack would have provided

exculpatory evidence that Petitioner had no motive to rob the victim.  Petitioner asserts

that Laminack would have testified that he and the victim were "like brothers and were

always there for each other."  (Doc. 1, at 22.)  Petitioner also asserts that Mr. Laminack

would have testified that the victim frequently loaned his truck and money to Petitioner,

thus undermining the state's theory that Petitioner's motive for the murder was stealing

the victim's money and truck. Petitioner also asserts as part of this claim that he has "newly discovered evidence" that William Marshall would have testified that Petitioner had permission to drive the victim's truck, and therefore had no motive to kill the victim in order to steal his truck.

Petitioner presented both of these claims to the state postconviction court, and both Laminack and Marshall testified at the evidentiary hearing. Laminack testified that he had grown up with the victim's son, and had seen the victim lend Petitioner vehicles and money upon request. (Resp. Ex. CC, at 33.) He also testified that he had not seen Petitioner "mess[] with any guns." *Id.* at 34. Laminack stated that he "didn't want to testify," and that "if [the victim] had been murdered with a knife [rather than a gun], then there's a possibility that it would be [Petitioner]." *Id.* at 35, 36. Marshall testified that he was willing to testify that on December 24, 2002 he was at the victim's house, and saw Petitioner drive up in the victim's truck. *Id.* at 43, 44.

Petitioner's trial counsel also testified at the evidentiary hearing. He stated that he interviewed Laminack, and that Laminack told him that he "didn't want to testify, and the main reason he didn't want to testify is because he was afraid of [the victim's son]." *Id.* at 49. He further testified that he did not compel Laminack to testify because Laminack "would've come in and he would've said, oh, I don't know, you know, I don't remember." *Id.* Counsel stated that "if I've got a witness telling me don't call me, I don't want to come to court and testify, that's a message to me he's probably going to be hostile." *Id.* at 50.

With respect to Marshall, trial counsel testified that his investigator talked to "a clan of Marshalls up there in Brannonville," but that he didn't "remember meeting with

him and I don't remember that information being divulged" at the time of the trial." *Id.* at

54. Counsel further stated that if Marshall had told him about seeing Petitioner in the

victim's truck, "I think I would've called him." *Id.* at 64.

In its order denying relief on this claim in Petitioner's state postconviction motion,

the state court recounted the testimony from the evidentiary hearing, described above.

The state court also noted that counsel testified at the hearing that

> there were other witnesses who could have presented testimony helpful to
> [Petitioner], but because of there [sic] unwillingness to testify, he decided
> not to depose or subpoena them for trial, purportedly as a strategic
> decision similar to the one he made when considering whether to call Mr.
> Laminack as a witness. In his testimony, counsel did not name these
> individuals. . . . However, counsel summarized their testimony and
> suggested that had they testified at trial about the things they had told
> him, the Defendant would have been acquitted.

(Resp. Ex. FF, at 1715.) The court described counsel's testimony about an individual

who told him that the victim and his son had a dispute over a tank of anhydrous

ammonia, which the son wanted for making methamphetamine. Another individual told

counsel that he had sold the victim a bag of Valium, which was in the possession of the

victim's son after the murder. *Id.* The court concluded:

> Given the testimony at this hearing, it seems clear to this court that
> counsel's failure to depose and subpoena for trial Mr. Laminack, Mr.
> Marshall and the two "phantom" witnesses to which he alluded to at this
> hearing constitutes a departure from a reasonably competent
> performance under prevailing professional standards. This court concurs
> with the Defendant's counsel in these proceedings that had counsel either
> obtained sworn statements from the witnesses or deposed them, he could
> have established what they would have said and had available the means
> to impeach those individuals if they changed their testimony at trial. This
> omission must, however, be viewed against the balance of counsel's
> performance in defending his client, which in this case, was nothing short
> of stellar. *See Hartley v. State*, 990 So. 2d 1008 (Fla. 2008).

It is the second prong of the *Strickland* test where Defendant's

motion falls short.  In order to prevail in these proceedings, the Defendant must establish that, but for the unprofessional errors, there is a reasonable probability that the result of the proceeding would have been different.  After having reviewed the transcript in this matter, it is clear to this court that counsel presented other absence of motive evidence that the Defendant had a good relationship with the victim and that the victim made available to the Defendant most anything he needed.  Counsel also offered witness testimony that the victim's son had an ongoing dispute with his father over the anhydrous ammonia tank and also expected to receive his father's business when he died.  The jury had ample evidence to consider Keith Brown [the victim's son]'s motive an opportunity to rob and kill his father.  Adding additional witnesses to testify on these subjects would not have changed the outcome of this trial, given the State's circumstantial evidence and the compelling testimony from numerous State witnesses, including the Defendant's nephew, who testified that the Defendant told them that he planned and executed the robbery and murder of Jerry Brown.  *See Strickland v. Washington*, 466 U.S. 668 (1984).

*Id.* at 1715-16.

Petitioner has not shown that the state court's denial of postconviction relief on ths claim was contrary to or an unreasonable application of *Strickland*.  The state court found that trial counsel's performance did fall below a reasonable professional standard, because counsel should have at least deposed the favorable witnesses prior to trial so that he could have potentially impeached them if they testified differently at trial.[1]  The court found, however, that counsel's performance in general was otherwise "stellar," and, critically, that there was no evidence that the outcome of the trial would have been different if Laminack and Marshall had testified.  Petitioner asserts that Laminack would have testified that Petitioner and the victim were close friends, and that

---

[1] Respondent correctly notes that the state postconviction court addressed counsel's failure to depose, subpoena or call as witnesses Laminack and Marshall, as well as two "phantom" witnesses, but only the failure to call Laminack and Marshall is at issue here.

the victim would lend Petitioner money and his vehicle on occasion. As the state court noted, there was other testimony at trial that the Defendant and the victim had a good relationship. (Resp. Ex. D, at 706, 854, 889.) There was also testimony that the victim had loaned Petitioner money. *Id.* at 868. Petitioner similarly asserts that Marshall's testimony – that Petitioner had permission to use the victim's truck, and therefore no motive to rob him – would have undermined the state's theory of motive. But as the state court found, defense counsel presented other evidence that Petitioner was close friends with the victim, presumably undermining motive. Defense counsel also presented evidence that the victim's son did have motive to kill his father based on their conflict over the victim's possession of a tank of anhydrous ammonia. *Id.* at 984. In light of this evidence presented at trial, as well as the other circumstantial evidence of guilt and the multiple witnesses who testified that Petitioner had confessed to the crime, Petitioner has failed to show that he was prejudiced as a result of his counsel's failure to call Laminack and Marshall as witnesses. Accordingly, Petitioner is not entitled to relief on this claim.

### *Claim Five: Ineffective Assistance of Counsel for Failing to Move for a Statement of Particulars*

Petitioner asserts that his counsel was ineffective for failing to move for a statement of particulars to narrow down the date of death of the victim, Jerry Brown. While the State's theory was that the victim had been killed on December 26, 2002, the exact date of the victim's death was a disputed issue at trial. The victim's body was not found until January 2, 2003. Both the State and the defense offered expert testimony regarding the date of death, and there was testimony that the victim could have died

between December 26, 2002 and December 31, 2002.  Petitioner asserts that if his counsel had moved for a statement of particulars, the State would have had to prove that the victim died on December 26, 2002.  Petitioner asserts that he had an alibi witness for that date, Wanda Smebly, and that he had other alibi witnesses for the following week.

Petitioner raised this claim in his state postconviction motion, and the state court denied the claim.  (Resp. Ex. FF.)  At the evidentiary hearing on the postconviction motion, Petitioner's trial counsel testified that he thought that the State's theory of the case – that the victim was shot in his recliner at home on December 26, 2002 – was not plausible because blood patterns suggested that the victim had walked out of his home after being shot.  (Resp. Ex. CC, at 50.)  Counsel further testified that the issue of filing a statement of particulars did not come up, because "it was so obvious that Jerry Brown wasn't killed on December – what was it, 26 or maybe early morning the 27th. . . I mean, that just didn't happen."  *Id.* at 60.

The state postconviction court's denial of this motion was not contrary to or an unreasonable application of federal law.  The exact date of the victim's death was unknown, and the subject of disputed testimony at trial.  Under Florida law, "[a] defendant is not entitled to a bill of particulars specifying the exact day upon which a crime occurred if the exact date is not known."  *Jenkins v. State*, 444 So.2d 1108, 1108 (Fla. 1st DCA 1984) (citing *State v. McGregor*, 409 So.2d 504 (Fla. 4th DCA 1982)).  If Petitioner's trial counsel had moved for a statement of particulars as to the day of victim's death, the request likely would have been denied.  Petitioner's counsel cannot be found ineffective for failing to make a motion that would have been meritless.

Even if Petitioner's counsel had moved for a statement of particulars, the State likely could not have provided the exact date of December 26, 2002 when trial testimony indicated that the exact date was not known – rather, the State likely would have reiterated the allegations of the indictment, that the victim died "on or about" December 26, 2002. Accordingly, Petitioner is unable to show that he was prejudiced as a result of his counsel's alleged failure. Petitioner is not entitled to relief on this claim.

### *Claim Six: Ineffective Assistance of Counsel for Failing to Properly Object to Improper Prosecutorial Statements*

Petitioner asserts that his trial counsel was ineffective for failing to properly object to the prosecutor's statement, in closing argument, that the defense had failed to move for a bill of particulars to narrow down the date of death. Petitioner asserts that this remark improperly shifted the burden of proof to the defense on the issue of when the victim died. Petitioner contends that his trial counsel was constitutionally ineffective for failing to object to this remark and for failing to request a mistrial.

Petitioner raised this issue in his state postconviction motion, and the state court denied relief on the merits. The First DCA affirmed without opinion. (Resp. Ex. FF,

It is well-settled that improper jury argument by the prosecution violates a defendant's constitutional right to a fair trial in some circumstances. *See, e.g., Cronnon v. State*, 587 F.2nd 246, 251 (5th Cir. 1978). "[T]he appropriate standard of review for such a claim on writ of habeas corpus is 'the narrow one of due process, and not the broad exercise of supervisory power.'" *Davis v. Kemp*, 829 F.2d 1522, 1527 (11th Cir. 1987). The Court applies a two-step process in reviewing such a claim: (1) the Court

considers whether the argument was improper; and (2) whether any improper argument was so prejudicial as to render the trial fundamentally unfair. *Id*. at 1526. Thus, "'[t]he relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id*. at 1526-27 (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974)). A trial is fundamentally unfair if there is a reasonable probability that but for the prosecutor's improper remarks, the outcome of the trial would have been different. *Williams v. Kemp*, 846 F2d 1276, 1283 (11th Cir. 1988).

As discussed above, the date of the victim's death was a disputed issue at trial. During the prosecutor's rebuttal closing argument, he said:

> Now, Mr. Smith talks about the day of the 26th. Is that the right day? The state has alleged that. Well, let me read you the information out of the, out of the wording out of the indictment. On or about the 26th of December. It is not a specific thing. It is not a specific date, it is on or about. And there is a pleading known in the law as –

(Resp. Ex. D, at 1100.) At this point Petitioner's counsel objected that this argument was "outside the scope of any evidence." *Id.* The state trial judge overruled the objection and told the prosecutor to continue. *Id.* The prosecutor went on, "There is a pleading known as a Bill of Particulars in which you can narrow down the date. There has been no evidence that there has been a request for a Bill of Particulars or a Statement of Particulars." *Id.* At the evidentiary hearing, Petitioner's trial counsel testified that he "could've made that specific objection, that the State was attempting to shift the burden" but at the time of the trial, he "didn't perceive it as that. I saw it more as the State trying to interject irrelevant stuff into the, into their argument." (Resp. Ex. CC, at 63.) Counsel further testified that he felt that the "appellate courts kind of gloss

over" shifting-of-the-burden arguments on appeal. *Id.*

Petitioner has failed to show that the state court's denial of this claim was contrary to or an unreasonable application of federal law. While Petitioner argues that his counsel should have objected to the prosecutor's comment on the grounds that the comment improperly shifted the burden of proof – rather than objecting, as he did, that the comment was outside the scope of the evidence – that objection would have been meritless. Read in the context of defense counsel's closing statement, the prosecutor's remark was not improper. In his closing argument, defense counsel asserted that "the state has alleged that . . . this murder occurred on December 26th." (Resp. Ex. D, at 1056.) He went on to discuss expert testimony that indicated that the murder could have occurred between December 26 and December 30, 2002, as well as physical evidence that suggested that the time of death was around December 29, 2002. *Id.* at 1057, 1059-61. Defense counsel also discussed testimony that suggested that the death occurred on December 31, 2002. *Id.* at 1062-63. He went on to suggest that the prosecution's theory of the case was implausible, and that Petitioner had no motive to kill the victim.

Because the closing argument by Petitioner's counsel stressed that the State's theory of the case was that the victim was killed on December 26, 2002, and went on to discuss conflicting testimony regarding the date of death, it was proper for the prosecutor to note that the indictment actually stated "on or about December 26, 2002." *Id.* at 1100. As the prosecutor stated, the indictment did not list "a specific date, it is on or about." *Id.* The State's comment that the defense had not filed for a statement of particulars was clearly directed at emphasizing that the State only had to prove that the

crime occurred "on or about" December 26, 2002, rather than improperly shifting the burden of proof to the defense to prove the date. Because the prosecutorial remarks were not improper burden-shifting, Petitioner's counsel could not be found ineffective for failing to make a meritless objection.

Even if the prosecutor's remarks were improper, they were not so prejudicial as to affect the outcome of the trial. As discussed previously, the State presented circumstantial evidence that the Petitioner had a motive to rob the victim and was present at the victim's home during the period in question. The State also presented testimony from multiple individuals who stated that Petitioner had confessed to robbing and murdering the victim. With respect to the date that the victim was killed, expert testimony was presented by both the State and the defense on this issue. Petitioner has presented no evidence that he was prejudiced by his counsel's purported failure. Accordingly, he is not entitled to relief on this claim.

## Certificate of Appealability

Section 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). Therefore, the undersigned recommends that the district court deny a certificate of

appealability in its final order.

Rule 11(a) also provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED:**

1. That the petition for writ of habeas corpus (Doc. 1) should be **DENIED**.

2. That a certificate of appealability should be **DENIED.**

**IN CHAMBERS**  this 6th  day of August 2013.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

**NOTICE TO THE PARTIES**

A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.